Marion K. Kelley
vs                    P. A. No. 988
Julia E. Kearns, Adm'x.

OPINION

April 23, 1927

SUMNER J. This is an appeal from the probate of the will of Timothy L. Kelley, wherein the jury returned a verdict against the will. The Court heard appellee's motion for a new trial on March 19 and granted it. In view of the nature of the case it seems proper that the Court give an opinion.

The daughter, Marion K. Kelley, claimed that by reason of serious illness in the nature of the hardening of the arteries her father was not capable of making a will. She also claimed undue influence on the part of Miss Kearns, the principal beneficiary under the will. Marion Kelley was the only child and heir decedent. She claimed great affection for her father but the salient fact in support of the will was the absolute absence of any relations between the father and the daughter Marion for some eleven years prior to his death. They did not speak when they met on the street, and they made no effort to see each other. Although the daughter knew of her father's illness at the hospital which resulted in his death sixteen days afterwards, she did not attempt to visit him there.

There was testimony to the effect that the father spoke well of his daughter on many occasions and told some people that he intended to leave her his estate. He could speak well

of his daughter and yet have no affection for her. Actions, of course, speak louder than words.

As to the allegation of undue influence on the part of Miss Kearns, Kelley's relations with Miss Kearns were admittedly intimate for a number of years. She said they were engaged to be married and the Court saw no reason to doubt her statement. Until Kelley went to live with her after he left the hospital, she had no unusual opportunity to influence him. Mrs. Crandall testified that Mr. Kelley asked her to notify Miss Kearns that he was going to the hospital, where she visited him nearly every day. Mrs. Crandall also said that Mr. Kelley told her at the hospital that Miss Kearns would work her finger ends off for him. Kelley left the hospital and went to live with Miss Kearns and stayed there until his death some ten days thereafterwards.

The will was drawn by F. J. Duffy, Esq., while Mr. Kelley was at the hospital, in the presence of his nurse as she came and went. Miss Kearns was called later to discuss the question of an executor and the will was executed while she was at the hospital.

The testimony of the doctors who attended Mr. Kelley at the hospital, as well as the testimony of the attorney, Mr. Duffy, and Mrs. Crandall was to the effect that Mr. Kelley's mind was clear and he was in a fit condition to transact business. There was some testimony by Dr. McCann as to Mr. Kelley's feeble condition the night before he went to the hospital. His testimony is contradicted by Miss Kearns and Mrs. Crandall, and did not seem convincing to the Court. The testimony of Mrs. Crandall, with whom Kelley had boarded for eleven years, was, perhaps, most illuminating of all. She said he was in the full possession of his senses, that there was no one at the house to take care of him, so he went to the hospital. She never saw him have one of these heart attacks when he became dizzy, but said he told her he had two of them; that she asked him if he did not want to see his daughter and he said there was plenty of time, although he told her he expected to die. She said he was a steady working man who did not always tell the truth, especially if one was inquiring into his personal affairs; that Kelley told her his daughter had refused to speak to him on the street once, and she said she could not help believing him, he was so mad when he told her about it; that he told her more than once that he would remember her (Mrs. Cdandall) in his will, which he failed to do; that he did not talk to her about his daughter Marion after this one instance.

There was some testimony to the effect that Kelley had been "running around with women," the innuendo being that they were women of loose character, but as far as the Court can remember not one of the witnesses was willing to say that these women were immoral women.

The statement made by his daughter Marion on this point is apparently well illustrative of her attitude towards her father. She testified that "he was a married man so I decided the women he was with were of questionable character."

Miss Kelley did not believe in divorce and the fact that her father had divorced his wife meant to her that he had done something wrong. Naturally her intolerant attitude would not be very pleasant to her father.

There was testimony from his aunt, Abbie Kelley, a somewhat garrulous old lady, and a fireman named Donovan as to Mr. Kelley's mental condition at the hospital; that he was drowsy and sluggish and did not seem to be in the possession of his faculties. Their testimony was contradicted by that of the doctors, as well as Mrs. Crandall, and the Court did not place much reliance upon it.

It was unfortunate that both counsel insisted on going into the unpleasant details of the wordy contest between Miss Kearns and Miss Kelley over the custody of Mr. Kelley's remains. The matter seemed to the Court entirely extraneous and yet must have influenced the jury, which was somewhat below the average.

For Appellant: John P. Beagan and Edmund F. Beagan.

For Appellees: Comstock & Canning.